**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

THAYER HAMDALLA                                    CIVIL ACTION

VERSUS                                             NO.   18-3348

DARREL VANNOY, WARDEN                              SECTION: "G"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Thayer Hamdalla, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    On November 12, 2009, Hamdalla was charged by bill of information with forcible rape in violation of La. Rev. Stat. § 14:42.1.[1]    On January 19, 2012, a jury found him guilty as charged.[2]    The State filed a multiple bill of

---

[1]  State Rec., Vol. 2 of 7, Bill of Information, 1/19/12.    The crime of forcible rape has since been renamed second-degree rape.    *See* La. Rev. Stat. § 14:42.1(C).

[2]  State Rec., Vol. 1 of 7; Minute Entry, 1/19/12; State Rec., Vol. 5 of 7, Trial Transcript, 1/19/12; State Rec., Vol. 4 of 7, Verdict, 1/19/12.

information charging petitioner as a second-felony offender.[3]    On May 31, 2012, Hamdalla was sentenced to 40 years at hard labor without the benefit of probation, parole or suspension of sentence.[4]    That same date, following a multiple-offender adjudication, the trial court vacated the original sentence and sentenced Hamdalla as a second-felony offender to 80 years at hard labor without benefit of probation, parole, or suspension of sentence.[5]

On direct appeal, Hamdalla asserted that: (1) the evidence was insufficient to support his conviction; (2) the trial court abused its discretion in admitting hearsay testimony of the rape victim's mother; and (3) the sentence was unconstitutionally excessive.[6]    On October 2, 2013, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[7] On April 25, 2014, the Louisiana Supreme Court denied his application for a writ of certiorari.[8]

On May 29, 2015, Hamdalla filed a counseled application for post-conviction relief with the state district court.[9]    In that application, he asserted that his counsel rendered ineffective assistance by failing to: (1) file a motion for change of venue; (2) present evidence from the rape kit that tested negative; and (3) allow him to testify at trial.    On February 25,

---

[3]  State Rec., Vol. 1 of 7, Multiple Bill of Information, 4/12/12.

[4]  State Rec., Vol. 1 of 7, Minute Entry, 5/31/12; State Rec., Vol. 5 of 7, Sentencing Transcript, 5/31/12.

[5]  State Rec., Vol. 1 of 7, Minute Entry, 5/31/12; State Rec., Vol. 5 of 7, Sentencing Transcript, 5/31/12.

[6]  State Rec., Vol. 5 of 7, Appeal Brief, 2012-KA-1413, 4/13/12.

[7]  *State v. Hamdalla,* 2012–KA–1413 (La. App. 4 Cir. 10/2/13), 126 So.3d 619; State Rec., Vol. 5 of 7.

[8]  *State v. Hamdalla*, 2013–K–2587 (La. 4/25/14), 138 So.3d 642; State Rec., Vol. 7 of 7.

[9]  State Rec., Vol. 2 of 7, Uniform Application for Post-Conviction Relief and Memorandum in Support of Petition filed May 29, 2015.    Because the application identified the victim by her first and last name, the entire file was placed under seal and the state district court, in an abundance of caution, required counsel to file the application, which was done on August 10, 2015.

2016, the state district court held a hearing at which argument was heard.[10]    The state district court denied the application for post-conviction relief and a request for an evidentiary hearing on March 3, 2016.[11]    On July 27, 2016, Hamdalla filed an application for writ with the Louisiana Fourth Circuit Court of Appeal.[12]    The Fourth Circuit denied Hamdalla's writ application on the merits on June 23, 2016.[13]

On July 22, 2016, Hamdalla filed a writ application with the Louisiana Supreme Court.[14]    On February 2, 2018, the Louisiana Supreme Court denied Hamadalla's petition for writ of certiorari, finding that "[r]elator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)."[15]

On March 28, 2018, Hamdalla, through new counsel, filed the instant application for habeas corpus relief.[16]    In that application, Hamdalla claims there was insufficient evidence to support his conviction.    He also claims he was denied effective assistance of trial counsel by failing to: (1) prepare for trial;[17]  and (2) allow petitioner to testify at trial.    He also

---

[10]  State Rec., Vol. 1 of 10; Minute Entry, 2/25/16; State Rec., Vol. 6 of 7, Hearing Transcript, 2/25/16.

[11]  State Rec., Vol. 1 of 10, State District Court Judgment denying post-conviction relief, 3/3/16; Minute Entry, 3/8/16.

[12]  State Rec., Vol. 6 of 7, 4th Circuit Writ Application, 16-KP-1387, 7/27/16.

[13]  State Rec., Vol. 6 of 7, *State v. Hamdalla*, 2016-K-0559 (La. App. 4 Cir. 6/23/16) (unpublished).

[14]  State Rec., Vol. 7 of 7, La. Supreme Court Writ Application, 16 KP 1387, 7/22/16.

[15]  *State v. Hamdalla*, 2016–KP–1387 (La. 2/2/18), 234 So.3d 874 (per curiam); State Rec., Vol. 7 of 7.

[16]  Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[17]  In support of this claim, petitioner contends that his counsel visited him only once, failed to cross-examine the victim's mother, did not call any defense witnesses, and failed to test the prosecution's case in any meaningful way in violation of *United States v. Cronic*, 466 U.S. 648 (1984).    (Rec. Doc. 10, pp. 17, 22-23).

claims that his sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment. Finally, he claims that the trial court's admission of hearsay testimony violated his right to due process of law.

The State concedes that Hamdalla's petition is not successive and that the federal application is timely.    It claims that Hamdalla failed to exhaust his claim of ineffective assistance of counsel for failing to prepare for trial and that claim is now procedurally barred. It also contends that, to the extent that petitioner claims that the trial court misapplied Louisiana law in admitting hearsay testimony, his claim is not cognizable.    The States further claims that any claim that the erroneous admission of hearsay testimony violated federal law is not exhausted and is technically procedurally defaulted.    It contends that the remaining claims should be dismissed on the merits.[18]

### Facts

The following facts were established at trial and summarized by the Louisiana Fourth Circuit Court of Appeal:

> Mr. Hamdalla was a taxicab driver.    Upon leaving a club in which adults may have consensual sex with strangers, the victim, a twenty-seven year old woman, entered Mr. Hamdalla's taxi.    During the ride, Mr. Hamdalla reached into the backseat area and began to feel or stroke the victim's ankle. The victim made no objection to his conduct at that point.    Mr. Hamdalla invited the young woman to ride in the front seat, and she climbed into the front seat.
> Once she was in the front seat, Mr. Hamdalla deviated from the route to her home.    Arriving in a dark area with warehouses, Mr. Hamdalla stopped his taxi.    Fearing that he was going to force her out of the taxicab, the young woman became even more frightened of what was going to happen.    Mr. Hamdalla began to touch her vagina under her dress.    The victim denied that she had "come on" to Mr. Hamdalla.    She testified: "I was scared. I wanted ... to tell him to stop, but I just couldn't.    I couldn't speak."    At the point when Mr. Hamdalla put his hand up her dress, she testified that she "kind of froze

---

[18] Rec. Doc. 10.

up." She said: "I tried to push it away, but I just couldn't." She tried to tell him to stop, but she "couldn't find the words."

Then Mr. Hamdalla grabbed the young woman's hand and made her hand touch his exposed penis. The taxi driver was in the driver's seat, and she was in the passenger seat. She said that he was holding her wrist and her arm with one arm. He tried to make her touch his penis, and she pulled away for a couple of minutes. She testified that she was afraid of getting out of the car in that bad area; she thought something worse might happen. She did not know where the taxi was located. She did not touch his penis willingly. The defendant then "grabbed" her head "and forced it down onto his penis."

When she was asked if she resisted, she replied: "Yes." She tried to pull herself away, but Mr. Hamdalla was too strong. She denied wanting to have oral sex (or any sexual encounter) with Mr. Hamdalla. According to the victim, Mr. Hamdalla then forced his penis into her mouth and ejaculated. His penis was in her mouth for "a few seconds."

Then, he let go of her. She moved back as far as she could go, and Mr. Hamdalla handed her a Kleenex tissue to wipe her mouth. She wiped her mouth and kept the Kleenex. He then pulled out his GPS and asked where she wanted to go. Neither of them said a word. He dropped her off at her mother's house. She started to give him money, but then put it back in her wallet. He did not ask for money.

The victim's testimony was not contradicted by any other witness.[19]

### Exhaustion and Procedural Default (Claim 2 –ineffective assistance of counsel for failing to prepare for trial and Claim 4 erroneous admission of hearsay testimony)

Initially, the Court must determine whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court, *i.e.*, the petitioner must have exhausted state-court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As previously noted, the State concedes the application is timely. However, the State maintains that claim two (in part) and claim four (in part) may not be

---

[19] *State v. Hamdalla*, 2012–KA–1413, pp. 3-4 (La. App. 4 Cir. 10/2/13), 126 So.3d 619, 621-22; State Rec., Vol. 5 of 7.

reviewed by this Court given Hamdalla's failure to exhaust and technical procedural default, given that he can no longer bring those claims in the state courts.

"Section 2254(b) requires that prisoners must ordinarily exhaust state court remedies before filing for federal habeas relief."    *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief.") (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997).    "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."    *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Pliler v. Ford*, 542 U.S. 225, 233 (2004); *Rose*, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."    *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added).    "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.    *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."    *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).    "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."    *Id.* (citing *Nobles,* 127 F.3d at 420).    It is not enough for a petitioner to raise the claims in the lower

state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

The State argues that Hamdalla failed to exhaust the claims fully by presenting them to the Louisiana state courts.    The State argues that, to the extent that petitioner is now arguing that the admission of the hearsay testimony violated federal law, the claim is unexhausted because petitioner did not bring a federal constitutional claim in the state courts.    Petitioner alleged a due process violation in his brief on direct appeal, although he cited only to state-law cases.[20]    The Fourth Circuit, in finding that the admission of the hearsay testimony was harmless error, cited to both federal and state cases.[21]    It therefore appears that this issue was exhausted.    Regardless, it is clear that a federal court may pretermit a decision on exhaustion where the underlying claim fails on the merits.    28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998); *Woods v. Cain*, Civ. Action No. 06–2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008).    Because that is the case here, the undersigned recommends that, in the interest of judicial economy, the federal claim relating to the erroneous admission of hearsay testimony be denied as meritless for reasons discussed later in this report.

---

[20]    State Rec., Vol. 5 of 7, Appeal Brief, 2-12-KA-1413, pp. 12-13.

[21]    *Hamdalla*, 126 So.3d at 626-625; State. Rec., Vol. 5 of 7.

With regard to parts of Hamdalla's second claim, the State correctly notes that neither the counseled application for post-conviction relief nor the supervisory writ applications filed with the Fourth Circuit or the Louisiana Supreme Court raise either the ineffective-assistance-of-trial-counsel claim for failing to prepare for trial or the subclaims that counsel visited petitioner on only one occasion, failed to cross-examine the victim's mother, failed to present any defense witnesses, and failed to subject the prosecution's case to meaningful adversarial testing. Rather, counsel on Hamdalla's behalf raised ineffective assistance of counsel for not moving for a change a venue, not introducing evidence from the rape kit, and preventing petitioner from testifying. Hamdalla does not dispute that his attorney omitted these claims in his state-court proceedings. The Court therefore finds those parts of claim two unexhausted.

Further, as the State notes in its response, Hamdalla's failure to exhaust his claims in state court presents an additional problem and basis for dismissal of this federal habeas claim, *i.e.*, a procedural bar in federal court. If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court. *Nobles v. Johnson*, 127 F.3d at 420 (internal quotation marks omitted). There is little doubt that any future attempt to exhaust these claims would result in a procedural bar by the state courts, because any new state post-conviction application would be both repetitive (La. Code Crim. P. art. 930.4) and untimely (La. Code Crim. P. art. 930.8). In fact, the Louisiana Supreme Court has already advised Hamdalla that he is no longer entitled to collateral review:

Relator has now fully litigated his application for post-conviction relief in state court.    Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La. C.Cr.P. art. 930.4 and within the limitations period as set out in La. C.Cr.P. art. 930.8. Notably, the Legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory.    Relator's claims have now been fully litigated accord with La. C.Cr.P. art. 930.6, and this denial is final.    Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.    The District Court is ordered to record a minute entry consistent with this per curiam.[22]

As a result, federal relief is barred unless Hamdalla demonstrates either (1) the existence of "cause" for his default and resulting "prejudice" or (2) that the Court's failure to address the claims would result in a "fundamental miscarriage of justice."    *See*, *e.g.*, *Bagwell v. Dretke*, 372 F.3d 748, 756-57 (5th Cir. 2004).    To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).    The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.    *Id.* at 486.    Hamdalla offers no justification for his procedural default of portions of claim two.    Hamdalla has not established cause for his default, and "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."    *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Additionally, he has not demonstrated that a fundamental miscarriage of justice will occur if the claims are not considered by this Court.    In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually

---

[22]    *State v. Hamdalla*, 2016-KP-1387, 234 So.3d 874; State Rec., Vol. 7 of 7.

innocent of the charges against him.    Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."    *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).    To show factual innocence, the petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.    *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see also Nobles*, 127 F.3d at 423 n. 33 (actual-innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").    When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.    *Glover*, 128 F.3d at 903.

In this case, Hamdalla failed to offer any basis for the Court to consider his defaulted claims and has not made a colorable showing of actual innocence.    Hamdalla arguably contends factual innocence by challenging the sufficiency of the evidence presented at trial. None of Hamdalla's arguments establish or raise doubt about his guilt that were not already considered by the jury.    He has pointed to no evidence that would show his actual innocence of the crime for which he was convicted.    Hamdalla has failed to overcome the procedural bar to his claims, and the portions of claim two relating to ineffective of counsel by failing to prepare for trial, visit him more than once, cross-examine the victim's mother, present defense witnesses, and subject the prosecution's case to meaningful adversarial testing should be dismissed with prejudice as procedurally barred.

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.    The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S. Ct. 294 (2010).    An "unreasonable

application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1866 (2010) ( "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA de novo standards of review. *Id.* at

598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

## Analysis

### A. Sufficiency of the Evidence

Hamdalla claims that the evidence was insufficient to support his conviction for forcible rape because the State failed to prove beyond a reasonable doubt that the sexual interaction between the victim and petitioner occurred without consent and through the use of force or threats of violence such that the victim was reasonable in her belief that resistance would not prevent the sexual encounter.    The Fourth Circuit rejected this claim on direct appeal, reasoning as follows:

> I
>
> In this Part, we explain why we conclude that, under the *Jackson v. Virginia* standard, the evidence in this case is sufficient for the conviction of Mr. Hamdalla for forcible rape.
>
> A
>
> We first consider the essential elements of the crime of forcible rape. Forcible rape punishes, inter alia, oral sexual intercourse committed without the consent of the victim.    *See* La. R.S. 14:42.1 A.    The intentional touching of the genitals of the offender by the victim using the mouth or tongue of the victim can constitute oral sexual intercourse.    *See* La. R.S. 14:41 C(2). Forcible rape is deemed to be without the consent of the victim "[w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."    La. R.S. 14:42.1 A(1).    Thus, the essential elements of the offense which the prosecution must prove beyond a reasonable doubt in this case are (1) an intentional act of oral intercourse (2) committed without the lawful consent of the victim when the victim is prevented from resisting the act by force or threats of physical violence under circumstances in which the victim reasonably believes that resistance would not prevent the rape.    *See State v. Reel*, 10–1737, p. 7–8 (La. App. 4 Cir. 10/3/12), 126 So.3d 506, 511, 2012 WL 4711881, at *4.
>
> ***
>
> C

At the outset of our consideration of the legal precepts which govern our review for sufficiency of evidence, we note that it is clearly established that the testimony of a victim, alone, can be sufficient to establish the elements of the offense of forcible rape, even where the prosecution does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.    *See State v. Armstead*, 11–1344, p. 4 (La. App. 4 Cir. 7/25/12), 98 So.3d 891, 894, *writ denied*, 2012–1881 (La. 3/8/13), 109 So.3d 355; *State v. Wells*, 10–1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So.3d 303, 306. *See also State v. Lewis*, 97–2854 (La. App. 4 Cir. 5/19/99), 736 So.2d 1004.

The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set out in *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).    "After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."    *Id.* at 318, 99 S.Ct. 2781.    "But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' "    *Id.* at 318–319, 99 S.Ct. 2781 (quoting *Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (emphasis added by *Jackson*)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."    *Id.* at 319, 99 S.Ct. 2781 (emphasis in original).    *See also Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (stating: "Jury verdicts finding guilty beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt.").

In discharging our review function, we consider "*all of the evidence*" before the actual fact-finder.    *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original).    The United States Supreme Court has explained that the standard of review for sufficiency of evidence is highly deferential to the fact-finder because it "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."    *Id.*    "The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."    *Id.*

Similarly, "[a] reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review."    *State v. Macon*, 06–0481, p. 8 (La.6/1/07), 957 So.2d 1280, 1285–1286.    "It is not the function of an appellate court to assess credibility or re-weigh the evidence."    *Id.* at 1286.    The Due Process Clause of the Fourteenth Amendment, the source of the *Jackson* standard, does not countenance, much less require, that we re-weigh testimony and witness credibility.    And "[i]n criminal cases [a court of appeal's] appellate jurisdiction extends only to questions of law."    La. Const. art. V, § 10(B).

*See also State v. Barthelemy*, 09–0391, p. 24 (La. App. 4 Cir. 2/24/10), 32 So.3d 999, 1015.

Therefore, in discharging our review function for sufficiency of evidence, we cannot re-weigh or re-consider reasonable inferences drawn from basic facts to ultimate facts.    We must confine ourselves to questions of law except to the extent, and only to the extent, that *Jackson* mandates otherwise.    *See State v. Gilmore*, 10–0059, p. 5 (La. App. 4 Cir. 10/6/10), 50 So.3d 208, 212–213.    Hence only irrational decisions to convict (based upon wholly implausible evidence or testimony) by the trier of fact will be overturned.    *See State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988); *State v. Winston*, 11–1342, pp. 7–8 (La. App. 4 Cir. 9/12/12), 100 So.3d 332, 336–337.

D

Applying these precepts to the uncontradicted testimony of the victim, we find that her testimony is not implausible.    Mr. Hamdalla argues only that the prosecution did not prove beyond a reasonable doubt that the oral sexual intercourse was committed *without* the young woman's consent.    But, of course, the victim established by her testimony, accepted by the jury, that Mr. Hamdalla was forcing her to gratify him in his vehicle which was located in a dark and isolated area, unfamiliar to her.    Mr. Hamdalla began by grabbing her arm in order to force her to touch his penis.    When she resisted even that contact, he then intensified the encounter through force sufficient to complete oral sexual intercourse.    Clearly, any rational juror could infer that she *reasonably* believed that further resistance would not prevent the rape.

Because Mr. Hamdalla does not contest sufficient proof of the other essential element of the crime of forcible rape, we conclude that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.    Thus, the evidence is sufficient to sustain the conviction.[23]

The Louisiana Supreme Court denied relief without assigning additional reasons.[24]

Because a sufficiency-of-the-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La.

---

[23] *Hamdalla*, 126 So.3d at 622-23.

[24] *Hamdalla*, 138 So.3d at 642.

Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    For the following reasons, the Court finds that Hamdalla has made no such showing.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal habeas court addressing an insufficiency-of-the-evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).    Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.    *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n. 16).    The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.    *See McDaniel v. Bro*wn, 558 U.S. 120, 131, 130 S. Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.    *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).    Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062 (2012).

Hamdalla was convicted by a jury of forcible rape.    To obtain a conviction for forcible rape, the State must prove (1) an act of vaginal, oral or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.    La. Rev. Stat. § 14:42.1; La. Rev. Stat. § 14:41; *State v. Richardson,* 425 So. 2d 1228, 1231 (La. 1983).    Under Louisiana law, the credible testimony of the victim of a sex offense alone is sufficient to establish the elements of the offense, even when the state does not introduce medical, scientific or physical evidence to prove commission of the offense by the defendant.    *State v. Johnson*, 96–KA–0950 (La. App. 4 Cir. 8/20/97), 706 So. 2d 468, 475.

Actual resistance is not required to sustain a forcible rape conviction; "all that is necessary is that the victim be *prevented from* resisting by force or threats of physical harm

to such an extent that she *reasonably believed* resistance to be futile." *State v. Carter*, 14–926 (La. App. 3 Cir. 4/1/15), 160 So. 3d 647, 654 (citing *State v. Savario*, 97–2614 (La. App. 1 Cir. 11/6/98), 721 So. 2d 1084, *writ denied*, 98–3032 (La. 4/1/99), 741 So. 2d 1280 and La. Rev. Stat. § 14:43.1), *writ denied*, 2015–K–0859 (La. 6/17/16), 192 So. 3d 770 (La. 2016). Further, a forcible rape conviction may be sustained in cases involving minimal uses of force. *Pitts v. Tanner*, Civ. Action No. 6:14-cv-3415, 2015 WL 10045174, at *7 (W.D. La. Dec. 14, 2015) (citing *State v. Parish*, 405 So.2d 1080, 1087 (La. 1981)), *adopted*, 2016 WL 554884 (W.D. La. Feb. 10, 2016).    There is also no requirement that the victim suffer physical harm to establish physical force or a threat thereof.    *El-Amin v. Cain*, Civ. Action No. 15-1425, 2016 WL 8730547, at *14 (E.D. La. Jan. 22, 2016), *adopted*, 2016 WL 3742175 (E.D. La. July 13, 2016), *certificate of appealability denied*, No. 16-30846, 2017 WL 4858083 (5th Cir. June 30, 2010), *cert. denied*, 130 S.Ct. 458 (2017).

Hamdalla contends that there was no evidence of forceful behavior or of any threats by him and no evidence of any resistance by the victim that would have alerted him that the encounter was not consensual.    Here, the record as a whole contains sufficient evidence introduced by the State for the jury to have concluded that the encounter was not consensual and that the victim reasonably believed that resistance would not prevent the rape.

The jury heard testimony from the victim that, after she moved to the front seat of the cab, petitioner began taking strange turns and was not going in the direction of her residence.[25]    The victim testified that petitioner eventually pulled over on the side of the

---

[25]  State Rec., Vol. 5 of 7, Trial Transcript, pp. 115-116.

road in a dark area near warehouses.[26]    According to the victim, she believed he was going

to force her out of the car.[27]    She testified that petitioner began touching her vagina under

her dress.[28]    At that point, she was scared and she tried to push Hamdalla away more than

once, but was unable to do so.[29]    The victim explained that she wanted to tell Hamdalla to

stop, but she couldn't speak.[30]    She repeatedly testified that she tried to stop him, but

couldn't do so.[31]    The victim testified that petitioner grabbed her arm to make her touch his

penis and that that a struggle ensued.[32]    She explained that she did not know where she

was and was afraid to get out of the car because she feared something worse would happen

to her.[33]    The victim explained that petitioner then grabbed her by the back of her head and

pulled her down and pushed his penis into her mouth and ejaculated.[34]    She testified that

she tried to resist but that he was too strong.[35]    The victim testified that she did not consent

to the sexual encounter with Hamdalla.[36]

---

[26]  *Id.*, at p. 116.

[27]  *Id.*

[28]  *Id.*, at pp. 116-17.

[29]  *Id.*, at p. 117.

[30]  *Id.*, at pp. 117-18.

[31]  *Id.*, at pp. 117-18.

[32]  *Id.*, at pp. 118-19.

[33]  *Id.*, at p. 119.

[34]  *Id.*, at p. 120-21.

[35]  *Id.*, at p. 120.

[36]  *Id.*

The victim's testimony, which was accepted as true by the jury, satisfies the elements of forcible rape.   The oral intercourse occurred without her lawful consent.   She was prevented from resisting when Petitioner grabbed her arm and head and through the physical force used to accomplish sexual intercourse.

Here, the state court articulated the proper controlling law and reasonably applied the governing legal principles to the evidence adduced at trial.   When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.   Therefore, Hamdalla cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

B.   *Ineffective Assistance of Counsel*

Hamdalla claims that his trial counsel was constitutionally ineffective for failing to allow him to testify at trial.   He claims that "even after being advised that he should not [testify] because of his prior criminal conviction, [he] maintains that in spite of counsel's advice not to testify, he still informed counsel that he wanted to testify" but that counsel prevented him from doing so.[37]

The state district court rejected Hamdalla's claims that his counsel rendered ineffective assistance raised on post-conviction relief.[38]   The Fourth Circuit Court of Appeal

---

[37]  Rec. Doc. 1, p. 19.

[38]  State Rec., Vol. 1 of 7, State District Court Judgment denying post-conviction relief, 3/3/16; Minute Entry, 3/8/16.

denied Hamdalla's related writ application.[39]    The Louisiana Supreme Court denied writs, finding "Relator fails to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)."[40]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both deficient performance by counsel and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984).    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct

---

[39]   State Rec., Vol. 6 of 7, *State v. Hamdalla*, 2016-K-05599 (La. App. 4 Cir. 6/23/16) (unpublished).

[40]   *State v. Hamdalla*, 2016-KP-1387 (La. 2/2/18), 234 So.3d 874; State Rec., Vol. 7 of 7.

on the facts of the particular case, viewed as of the time of counsel's conduct.' "    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*    In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."    *Crockett*, 796 F.2d at 793.

Because the state courts rejected Hamdalla's ineffective-assistance-of-counsel claim on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

As previously explained, Hamdalla claims that counsel rendered ineffective assistance for failing to allow him to testify at trial.    Hamdalla claims that, despite his

counsel's advice that he not to testify due to the negative impact his prior convictions would have had on the jury, he advised his trial counsel several times that he wished to testify and that he would have taken the stand had his counsel not prevented him from doing so.   He claims that counsel made the decision to not present petitioner's testimony without consulting him.

The State argues that the state courts correctly rejected the claim that he was denied the right to testify as unsupported.    It further contends that Hamdalla has not shown a reasonable probability that the outcome of the trial would have been different had he testified.

A defendant has a fundamental constitutional right to testify.    *See Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987).    When a defendant contends that trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel."    *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002) (internal quotation marks and citation omitted).    "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand."    *Turcios v. Dretke*, Civ. Action No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991) ); *accord Jones v. Cain*, Civil Action No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, Civil Action No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).    In addressing the need for a petitioner to substantiate a claim that he was denied the right to testify by his counsel, the United States Seventh Circuit Court of Appeals has explained:

> There is grave practical difficulty in establishing a mechanism that will
> protect a criminal defendant's personal right (that is, a right not waivable by

counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...

[A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood v. Clark*, 939 F.2d at 475-76; *accord Richthofen v. Cain*, Civ. Action No. 05-5701, 2008 WL 630477, at *44-45 (E.D. La. Mar. 7, 2008); *Curtis v. Cain*, Civ. Action No. 06-1676, 2008 WL 482849, at *8-9 (E.D. La. Feb. 13, 2008); *Baker v. Cain*, Civ. Action No. 06-2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); *White v. Cain*, Civ. Action No. 06-1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); *Turcios v. Dretke*, *supra*. The United States Fifth Circuit Court of Appeals has favorably cited the rationale set forth in *Underwood*. *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999); *Silva-Garcia v. United States*, No. 10-cr-2224, 2012 WL 5464639, at *4 (S.D. Tex. Nov. 8, 2012).

Hamdalla asserts that he wanted to testify at trial, but defense counsel made the decision not to call him as a witness and thus prevented him from testifying. Nothing in the record indicates that Hamdalla ever made his desire known to the trial court. The record does not reflect that at any point during trial defense counsel refused to allow Hamdalla to testify contrary to Hamdalla expressed desire to do so. And while this alone does not end the inquiry, it clearly renders his assertion that defense counsel prohibited him from testifying entirely unsupported and conclusory. The record before this Court shows

24

that Hamdalla has never attempted to present any evidence to support his allegation that he wanted to testify, but that trial counsel refused his request.

Further, Hamdalla has not established that counsel's advice against testifying was unreasonable.    A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."    *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985); *accord United States v. Mullins*, 315 F.3d at 453; *Amos v. Cain*, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); *Curtis v. Cain*, 2008 WL 482849 at *10.    Such a matter is inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.    *Strickland*, 466 U.S. at 689.

Hamdalla claims that had he been permitted to testify he "would been able to confirm that the encounter was consensual, and that at no point did the accuser ask him to stop or let her out of the cab."[41]    Had he testified, however, Hamdalla would have been subjected to extensive cross-examination, including questions involving his prior criminal history, which could have undermined his credibility.    Instead of having Hamdalla testify, defense counsel wisely sought to establish inconsistencies and flaws in the State's case, which rested on the testimony of the victim.    Defense counsel used his cross-examination of the victim to point out her behavior immediately prior to and during the incident.    Defense counsel strategically considered the potential harm that plainly could outweigh any benefit

---

[41]  Rec. Doc 1, at p. 22.

petitioner's testimony might have provided the defense, and it appears that Hamdalla acquiesced in counsel's decision.    For these reasons, Hamdalla has not established that counsel's advice against testifying was unreasonable.    Nor has he demonstrated that the outcome of the trial would have been any different but for counsel's decision to present a defense without Hamdalla's testimony.

For the foregoing reasons, Hamdalla has not demonstrated that the state court's decision rejecting this ineffective-assistance-of-counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

C.  *Excessive Sentence*

Hamdalla contends the 80–year prison sentence for forcible rape imposed upon him as a second-felony offender is excessive because it is the maximum allowable sentence within the statutory penalty range and disproportionate based on the facts alleged and crime charged.    Hamdalla specifically states that he is not challenging his sentence under Louisiana law; rather, he contends the sentence is unconstitutional under the Eighth Amendment.[42]

On direct appeal, the Louisiana Fourth Circuit Court of Appeal set forth factors that sufficiently explained why the sentence of 80 years was proportionate and warranted for this crime:

III

In this Part, we turn to an explanation of our decision that the sentencing judge, who substantively complied with the legislative directive to adequately consider factors militating for and mitigating against lengthier

---

[42]  Rec. Doc. 1, p. 27.

sentences within a sentencing range, did not abuse her considerable discretion standard. After considering Judge Buras' justification for the sentence imposed, we conclude that the maximum sentence, which was imposed upon Mr. Hamdalla, is not outrageous and is not shocking to the conscience. Thus, we conclude from our review that the sentence is not unconstitutionally excessive.

A

Article I, Section 20 of the Louisiana Constitution of 1974 prohibits any law from subjecting a person to excessive punishment.    The excessiveness of a sentence is a question of law reviewable by this court under its appellate jurisdiction.[3]    *See* La. Const. Art. 5, § 10. The Louisiana Constitution differs from the Eighth Amendment to the U.S. Constitution in its explicit prohibition of excessive sentences.    This "deliberate inclusion by the redactors of the Constitution of a prohibition against 'excessive' as well as cruel and unusual punishment broadened the duty of this court to review the sentencing aspects of criminal statutes."    *State v. Baxley*, 94–2982, p. 4 (La. 5/22/95), 656 So.2d 973, 977.    A sentence is constitutionally excessive if "it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime."    *State v. Davis*, 449 So.2d 452, 453 (La. 1984).

[3]A sentence is the penalty imposed by the court upon a verdict of guilty.    Sentence shall be pronounced orally in open court and recorded in the minutes of the court.    *See* La.C.Cr.P. art. 871.

The prohibition against excessive sentences forbids their imposition by the judiciary as well as the legislature, and requires review of statutory sentencing guidelines in relation to the particular offense and offender. *State v. Sepulvado*, 367 So.2d 762, 766 (La. 1979). "[P]enalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society."    *State v. Landry*, 03–1671, p. 8 (La. App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239.    A trial judge is given wide discretion in the imposition of sentences within statutory sentencing guidelines.    *See State v. Cann*, 471 So.2d 701, 703 (La. 1985).    *See also Sepulvado*, 367 So.2d at 769.    This discretion has long been historically established.    *Dillon v. U.S*, 560 U.S. 817, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010).    The "imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment."    *Cann*, 471 So.2d at 703.    Statutory sentencing guidelines vary significantly in the degree to which they grant a sentencing judge the discretion to weigh the circumstances of the offense and mete out justice to those convicted.    "In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise discretion to impose sentences gradated according to the individualized circumstances of the offense and the offender."    *Sepulvado*, 367 So.2d at 766.    This interactivity between the range of permissible statutory criminal sanctions and the individualized facts of each case creates a sliding, fact-variant spectrum for a trial judge's discretion under each criminal statute for each particular criminal defendant.    Thus, the range of

discretion granted a sentencing judge in handing down a sentence fluctuates depending on the interactivity of the facts of a particular case, the permissible criminal sanctions, and the range of conduct prohibited by the particular criminal statute that the defendant is convicted of violating.

A reviewing court should not set aside a sentence imposed by a trial court absent a *manifest* abuse of this discretion. *See State v. Batiste*, 06–0875, p. 17 (La. App. 4 Cir. 12/20/06), 947 So.2d 810, 820 (emphasis added). Our sentence review should strive only to correct "abuses of sentencing power" by the district judge, *Sepulvado*, 367 So.2d at 767, and not to attempt to impose sentences that we deem more appropriate. *See State v. Soraparu*, 97–1027 (La.10/13/97), 703 So.2d 608, 608.

In reviewing a sentence for excessiveness, we ensure that the trial court took into account appropriate considerations in placing a specific defendant, when examining their specific offense, on a particular point in the range of statutorily permissible sentences. The Legislature has directed the trial courts to consider certain articulable criteria contained in La.C.Cr.P. art. 894.1 when handing down their sentences, and to state those considerations and their factual basis for the record. *See La.C.Cr.P.* art. 894.1 C. In evaluating whether the district court has abused its broad sentencing discretion, we first examine whether the court obeyed this legislative directive. *See Sepulvado*, 367 So.2d at 767–768.

The primary purpose of La.C.Cr.P. art. 894.1 is not to enforce rigid and mechanical compliance with its provisions, but to ensure that there is a factual basis for the sentence imposed. *See Batiste*, 06–0875, p. 18, 947 So.2d at 820. *See also Major*, 96–1214, p. 10, 708 So.2d at 819. Excessiveness analysis is cumulative and focuses on a combination of these factors. *See State v. Lathers*, 444 So.2d 96, 97 (La. App. 4 Cir.1983). "[T]hese criteria provide guidance as to whether the sentence should be closer to the maximum rather than to the minimum statutory range of sentence, if the sentencing judge does indeed determine that imprisonment rather than suspension of sentence or probation is the appropriate disposition." *Sepulvado*, 367 So.2d at 767–768. While the trial judge is not required to recite the entire checklist of aggravating and mitigating factors in La.C.Cr.P. art. 894.1, the "record must reflect that the judge adequately considered these guidelines." *State v. Soco*, 441 So.2d 719, 720 (La.1983). *See also State v. Square*, 433 So.2d 104, 110 (La.1983). This requires consideration of those "circumstances militating for incarceration, but also any mitigating factors," *Davis*, 449 So.2d at 454, including the offender's personal history, prior criminal record, the nature and seriousness of the offense, and the likelihood of rehabilitation or recidivism. *See Soco*, 441 So.2d at 720. *See also State v. Quebedeaux*, 424 So.2d 1009, 1014 (La. 1982); *State v. Telsee*, 425 So.2d 1251, 1253 (La. 1983).

Importantly, La.C.Cr.P. art. 894.1 is "not an exclusive listing of factors to be considered in imposing a sentence. Any and all relevant factors can and should be taken into account by the trial court." *State v. Lanclos*, 419 So.2d 475, 478 (La. 1982). *See also Pepper v. U.S.*, ––– U.S. ––––, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196 (2011). "Permitting sentencing courts to consider the

widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.' " *Id.* (quoting *Wasman v. U.S.*, 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984)).   For example, the defendant's truthfulness or lack thereof may be considered by the court in sentencing but is not alone a sufficient basis for the imposition of a relatively harsh penalty.   *See Quebedeaux*, 424 So.2d at 1014. See also State v. LaFleur, 391 So.2d 445, 447 (La.1980).   A judge also has discretion to hear a defendant's allocution pre-sentencing and take this into account when determining the appropriate sentence for this defendant. La.C.Cr.P. art 871 cmt c.   Sentencing judges may also consider the details of plea bargains and the details surrounding those offers as circumstances surrounding the offense.   *Lanclos*, 419 So.2d at 478.

In order to aid the judge in comprehensively evaluating a defendant under La.C.Cr.P. art. 894.1, a "court may order the Department of Public Safety and Corrections, division of probation and parole, to make a presentence investigation." La.C.Cr.P. art. 875.   A PSI report is an excellent instrument to assist the sentencing judge in substantively evaluating the factors in Article 894.1 as well as provide us, the appellate court, with a complete record in reviewing direct and post-conviction appeals for excessive sentences.   *See State v. Conner*, 09–1023, p. 4 (La. App. 4 Cir. 2/3/10), 30 So.3d 1132, 1135; La.C.Cr.P. art. 881.3; La. C. Cr.P. art. 877.[4]   The criminal defendant has a right to examine this report as "[f]undamental fairness to the defendant requires that the substance of all derogatory information which adversely affects his interest and which has not otherwise been disclosed in open court should be called to the attention of his defendant, his attorney, or others who are acting on his behalf."   *State v. Bosworth*, 360 So.2d 173, 175 (La.1978) (internal quotations and citations omitted).   "When, in imposing a heavy sentence, the trial court relies upon pre-sentence information which is materially false or which furnishes invalid information, the defendant must be given an opportunity to deny or explain such substantially significant misinformation." *Id.*   *See also State v. Ray*, 423 So.2d 1116, 1121 (La.1982).   This is usually done through a sentencing hearing, at which time the defendant is allowed to introduce sentence-influencing factors and considerations.   *See Sepulvado*, 367 So.2d at 769.   Sentencing hearings are a helpful practice to avoid remands to determine the basis of a sentence.   *Id.*   Errors committed in presentence investigations and sentencing hearings should be reviewed to determine if they caused prejudice to the defendant.   *State v. Guiden*, 399 So.2d 194, 200 (La.1981).

[4]For example, *compare, e.g., State v. Rayfield*, unpub., 10–0421, p. 4–7 (La. App. 4 Cir. 12/22/10) with *Conner*, 09–1023, p. 4–5, 30 So.3d at 1134–1135.

If we find that the district court properly considered the sentencing criteria in La.C.Cr.P. art. 894.1, we should then determine whether the defendant's sentence shocks the court's sense of justice in its disproportionality as to the facts and circumstances of this crime and this defendant.   *See State v. Reed*, 409 So.2d 266, 267 (La. 1982).   *See also State*

*v. Wilson*, 508 So.2d 960, 963 (La. App. 4 Cir.1987); *State v. Black*, 98–0457, p. 8, 757 So.2d [887] at 892 [ (La. App. 4 Cir.2000) ]; *State v. White*, 01–134, p. 11 (La. App. 5 Cir. 7/30/01), 792 So.2d 146, 154.   "[M]aximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender."   *Quebedeaux*, 424 So.2d at 1014.   *See also Soco*, 441 So.2d at 720.

Sometimes, in order to more thoroughly review a maximum sentence, courts have analyzed the sentence through a comparator.[5]   *See Square*, 433 So.2d at 110. *See also Telsee*, 425 So.2d at 1254; *State v. Guajardo*, 428 So.2d 468, 472 (La. 1983); *State v. Welch*, 550 So.2d 265, 266 (La. App. 4 Cir.1989); *State v. Trepagnier*, 97–2427 (La. App. 4 Cir. 9/15/99), 744 So.2d 181, 189– 190.[6]   This review, however, must still only be for abuse of the trial court's broad sentencing discretion.   *See State v. Walker*, 00–3200, p. 2 (La. 10/12/01), 799 So.2d 461, 462.   An appellate court "shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.C.Cr.P. art. 881.4 D.   "[G]reat weight must be given to [a sentencing judge's] factual characterizations of the aggravating and mitigating circumstances justifying more severe punishment."   *Sepulvado*, 367 So.2d at 767.   "[A] remand for resentencing is appropriate only when there appears to be a substantial possibility that the defendant's complaints of an excessive sentence have merit."   *State v. Soraparu*, 97–1027 (La.10/13/97); 703 So.2d 608, 608. (internal quotations and punctuation omitted).   *See also Black*, 98– 0457, p. 9, 757 So.2d at 892.

[5]A comparator is any of various instruments for comparing a measured property of an object with a standard. In this case, the sentence imposed, measured in years and other factors such as eligibility for parole, probation, and suspension of sentence, would be compared for excessiveness by examining the disposition of cases of similar crimes by the same court or other courts and creating a broad permissible range of sentences.

[6]Resorting to a comparator in evaluating excessiveness in sentences imposed under habitual offender proceedings before finding that the sentence is shocking based upon Article 894.1's factors lacks some logical force because the consideration of comparators as part of an element dealing with customization of a sentence for this offender and this offense seems to be opposed to the concept that there are inherent factual variances that come with each criminal trial, offender, and offense.   A comparator, it seems, is more appropriately utilized after we find that the sentencing court shockingly abused its broad sentencing discretion.   The use of comparators in this context will most effectively ensure that the defendant's sentence when reconsidered will be proportional in comparison with other similar offenders and to provide sufficiently clear parameters for the sentencing court's action upon remand, if necessary.   This framework would mirror review of general damages in the civil context.   *See, e.g., Miller v. Lammico*, 07–1352, p. 28–29 (La. 1/16/08), 973 So.2d 693, 711.

B

Mr. Hamdalla's sentence of eighty years of imprisonment at hard labor without the benefit of probation or suspension of sentence is within the statutory sentencing limitations.   It is, however, the maximum penalty allowed to be imposed against Mr. Hamdalla, who has been adjudicated a

second felony offender under La. R.S. 15:529.1, following his conviction for the crime of forcible rape.

Before imposing sentence, Judge Buras obtained a pre-sentence investigation report detailing Mr. Hamdalla's social, employment, and criminal history as well as recommending that the trial judge sentence Mr. Hamdalla, 28 years old at the time of this conviction, to a significant period of years. The PSI report was made available to Mr. Hamdalla and to the prosecutor who were afforded an opportunity to object to any material errors in the report.[7] Mr. Hamdalla argues that the presentence investigation contained errors, specifically noting discrepancies in the information pertaining to door locks on his cab on the night in question.    Counsel for Mr. Hamdalla brought this error to the attention of the Judge Buras prior to sentencing. The mistake caused no prejudice to Mr. Hamdalla.    *See Guiden*, 399 So.2d at 200.

> [7]Mr. Hamdalla's attorney at trial noted two specific errors in the pre-sentence investigation report.    First, the report stated that Mr. Hamdalla pulled the victim into the front seat.    This was contradicted by the victim's testimony at trial.    Second, the pre-sentence investigation stated that the doors to the cab could not be opened.    There was no evidence of this at trial and was contradicted by Detective Haynes' testimony.

In making her determination, Judge Buras examined the PSI and "state[d] for the record the considerations taken into account and the factual basis therefor in imposing sentence."    La.C.Cr.P. art. 894.1 C.    She was thorough and considered many of Article 894.1s factors.

1

In reviewing the factors which militate toward a sentence of lengthy incarceration, Judge Buras examined the facts contained in the pre-sentence investigation report, including Mr. Hamdalla's extensive recent arrests, prior convictions, and pending charges including a weapons violation in Tennessee in 2003, two arrests in 2004 in Jefferson Parish for simple battery and cruelty to a juvenile, a 2006 arrest for aggravated assault in Orleans Parish, a 2007 conviction in Arkansas for possession with the intent to distribute marijuana, a 2008 conviction in Jefferson Parish for five counts of unauthorized use of a credit card, and four 2007 attempted manslaughter charges pending in St. Charles Parish.

Judge Buras then delved into the particular facts of some of these cases, noting the similarities in Mr. Hamdalla's arrests and convictions.    She noted that the offender was charged with simple battery in Jefferson Parish for allegedly groping and biting a woman on the face, cruelty to a juvenile in Jefferson Parish for biting a four year old child on the buttocks because the child would not eat, and aggravated assault in Orleans Parish and attempted manslaughter in St. Charles Parish for shooting at individuals two separate times from his car and, in one of the cases, at a car containing children.    Judge Buras also noted that Mr. Hamdalla was charged with unauthorized use of a credit card while still on probation in Arkansas stemming from his arrest for possession of marijuana with an intent to distribute.    Additionally, Mr. Hamdalla was convicted of unauthorized use of a credit card in Jefferson Parish for taking a Rolex watch, diamond rings, and credit cards from a fare in

his taxi who drunkenly passed out in the backseat. Mr. Hamdalla then used the credit card at multiple stores.

Notably, Mr. Hamdalla does not factually dispute his conduct, behavior and involvement in these offenses. He only argues that the sentencing judge abused her discretion and improperly relied upon and considered previously dismissed offenses and pending felony charges in his criminal record when making her ruling on sentencing. Sentencing judges, however, may consider any and all relevant factors when making their decisions. *Lanclos*, 419 So.2d at 478.

Judge Buras next found that Mr. Hamdalla was taking advantage of passengers in his cab who were not "aware as they could possibly be and ... assert[ing] his authority over his fares by stealing from them, and in this case, raping them." *See* La.C.Cr.P. art. 894.1 B(4). She also found that Mr. Hamdalla's assault, its aftermath, and the resulting trial caused significant emotional trauma on the victim,[8] *see* La.C.Cr.P. art. 894.1 B(9), that forcible rape was a crime of violence under La. R.S. 14:2 B, *See* La.C.Cr.P. art. 894.1 B(6), that imposing a lesser sentence would deprecate the seriousness of this offense, *See* La.C.Cr.P. art. 894.1 A(3), that Mr. Hamdalla was a risk to the community and would not be rehabilitated, *See* La.C.Cr.P. art. 894.1 A(1), and that he should be confined in an institution for the maximum allowed sentence. *See* La.C.Cr.P. art. 894.1 A(2). Finally, the sentencing judge also noted that Mr. Hamdalla "is and should be classified as a third offender because of the Arkansas felony as well as the Jefferson Parish felony." The district attorney apparently elected not to prosecute Mr. Hamdalla as a third felony offender because the prosecution had not received the certified documents from Arkansas at the time of the sentencing hearing.

> [8]Mr. Hamdalla, according to the sentencing hearing, declined a pretrial guilty-plea bargain by which he would plead guilty to second degree battery (a non-sex charge and thus no sex-offender registration requirement) and the prosecution would forego habitual offender proceedings in exchange for a stipulated sentence of five years confinement.

Also, as we already indicated, the PSI recommended to Judge Buras that she incarcerate Mr. Hamdalla at the upper end of the sentencing range. Moreover, the content of the PSI made clear that Mr. Hamdalla, who neither testified at trial nor sought to personally allocute at the time of sentencing, was not remorseful and that he took no responsibility for his criminal action in raping the young woman. Indeed, even at sentencing, Mr. Hamdalla's counsel speculated (without any evidentiary or expert support) that both Mr. Hamdalla and his victim were "completely" unable to read each other's intentions, thereby suggesting that the victim herself shared in any blame.

2

In considering factors that might mitigate the length of the sentence, Judge Buras considered and decided that Mr. Hamdalla did not create a risk of death or great bodily harm in his actions, *See* La.C.Cr.P. art. 894.1 B(5), and that he did not use a dangerous weapon. *See* La.C.Cr.P. art. 894.1 B(10). But we importantly note that, if either of these factors had been present at the time of

the commission of the offense, Mr. Hamdalla could have been prosecuted for the more serious crime of Aggravated Rape.    *See* La. R.S. 14:42.    Finally, Judge Buras also found, as a mitigating factor, that Mr. Hamdalla had no previous convictions for crimes of violence.    This is an appropriate consideration and should surely not be discounted in a sentence imposed upon a second offender under the Habitual Offender Law.    *Cf. State v. Johnson*, 97–1906 (La. 3/4/98), 709 So.2d 672, 676.    Judge Buras, however, regarded Mr. Hamdalla's conviction for unauthorized use of a credit card to be "just as much as a robbery could be."    *See* La. R.S. 14:65. The sentencing judge clearly took into account the criteria set forth in La.C.Cr.P, art. 894.1.

C

Based upon this thorough justification for imposing the maximum sentence of eighty years of imprisonment at hard labor without the possibility of parole, probation, or suspension of sentence, we are satisfied that Judge Buras fully complied with the directive of Article 894.1 and customized the sentence in this matter both to the severity of this offense and to this offender. We do not find that the imposition of the maximum sentence in this particular case is outrageous and shocking to the sense of justice or that Mr. Hamdalla should not be classified as among the worst who have committed forcible rape.

Judge Buras did not abuse her considerable discretion, and we also conclude that Mr. Hamdalla's sentence does not violate Louisiana's constitutional guarantee against excessive punishment.[43]

The Louisiana Supreme Court denied relief without opinion.[44]

Hamdalla's claim that his sentence is excessive under the Eighth Amendment of the United States Constitution lacks merit.    Although Hamdalla claims that the sentence was unduly harsh based on the facts of the offense because it was the maximum penalty that could be imposed and he had been offered a five-year plea deal prior to trial, simply because a penalty is harsh does not mean that it is unconstitutionally excessive.

A state-court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this

---

[43] *Hamdalla*, 126 So.3d at 626-632; State Rec. Vol. 5 of 7.

[44] *Hamdalla*, 138 So.3d 642; State Rec. Vol. 7 of 7.

Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. at 405-406; *see also Bell v. Cone*, 535 U.S. at 694.   The Eighth Amendment only forbids the imposition of extreme sentences that are "grossly disproportionate" to the crime committed. *Lockyer v. Andrade*, 538 U.S. 63, 72–73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (rejecting a proportionality challenge where the defendant was sentenced to two consecutive terms of 25 years to life for two felony counts of petty theft for stealing $150.00 worth of videotapes); *Solem v. Helm*, 463 U.S. 277, 291-92 (1983) (holding that the Eighth Amendment prohibited a life sentence without the possibility of parole for a recidivist offender convicted of "uttering a 'no account' check for $100"); *Rummel v. Estelle*, 445 U.S. 263 (1980) (rejecting a proportionality challenge where the defendant, who had three prior non-violent felony offenses, had been sentenced to life imprisonment under a recidivist statute following his conviction for obtaining $120.75 by false pretenses); *see also McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir. 1992).   As the Supreme Court recognized in *Lockyer*, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 72-73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (rejecting a proportionality challenge for sentence of life in prison without parole for the possession of more than 650 grams of cocaine)).

In determining whether a sentence is grossly disproportionate, the Fifth Circuit framework dictates that courts first "makes a threshold comparison of the gravity of the offense against the severity of the sentence." *McGruder v. Puckett*, 954 F.2d at 316.   "Only if we infer that the sentence is grossly disproportionate to the offense will we then ... [ ]

compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *Id.* If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. *Harmelin*, 501 U.S. at 1005 ("[I]ntrajurisdictional and interjursdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."); *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997), *overruled on other grounds by United States v. O'Brien*, 560 U.S. 218, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010)). The Fifth Circuit applies this framework using *Rummel* as "a benchmark for claims of disproportionate punishment under the Eighth Amendment." *Id.* at 943.

Hamdalla's situation is not an extraordinary case in which the sentence is unconstitutionally disproportionate to the crime. He was charged with and convicted of forcible rape and adjudicated a second-felony offender.[45] His 80-year sentence, albeit the maximum allowed, falls within the limits set by the Louisiana legislature for a second-felony offender under Louisiana Revised Statute 15:529.1.[46] *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. This is so because we

---

[45] The State elected to charge Hamdalla as a second-felony offender rather than a third-felony offender because the certified documents relating to petitioner's Arkansas felony conviction had not been received at the time of the multiple offender hearing. State Rec., Vol. 5of 7, Sentencing Transcript, p. 15.

[46] For forcible rape, Louisiana law provides for a sentence of imprisonment at hard labor for not less than five nor more than 40 years, at least two years of which shall be without benefit of probation, parole, or suspension of sentence. La. Rev. Stat. § 14:42.1(B); *see also* La. Rev. Stat. § 15:529.1(A) ("If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.").

accord substantial deference to [the legislature], as it possesses broad authority to determine the types and limits of punishments for crimes." (citations omitted)); *see also United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997) (citing *Rummel v. Estelle*, 445 U.S. 263, 274–76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Gonzales*, 121 F.3d at 942 (quotation marks omitted).

Furthermore, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder v. Puckett*, 954 F.2d at 316. Here, Hamdalla's sentence reflected not only the seriousness of the offense, but also his significant prior criminal conduct.

Prior to sentencing petitioner, the trial court reviewed petitioner's criminal history as set forth in the presentence investigation report. The trial court noted:

> The pre-sentence investigation report denotes a criminal history that dates back to 2003, beginning with a weapons violation in the State of Tennessee in 2003.
> 2004, a simple battery, dismissed.
> Another arrest for cruelty to a juvenile, refused.
> 2006, aggravated assault, refused.
> 2007, Marion, Arkansas, possession with intent to distribute marijuana, conviction under case number CR-07-1309.
> 2008, the defendant pled guilty to five years department corrections, suspended sentence, five years probation. A warrant was issued from that jurisdiction on March the 9th, 2012.
> March 16, 2007, Jefferson Parish, eleven counts of misdemeanor theft under case number 07-5133 where the defendant pled guilty to three counts of unauthorized use of a credit card, received a misdemeanor probation.
> Also case number 07-5132 where the defendant pled guilty, originally billed as eight counts, eight felony counts. The defendant pled guilty to two counts of unauthorized use of a credit card with a three-year suspended sentence, three years probation.

July 7th, 2007, an arrest for attempted manslaughter.    That case is still pending in St. Charles Parish.

And then this instant offense from September the 9th, 2009, originally charged as aggravated rape with the reduced charge of forcible rape and a finding of guilt by a jury on January 19th, 2012.

The Court finds it pertinent to delve further into the pre-sentence investigation report about some of the arrests and underlying facts of some of the convictions that Mr. Hamdalla has amassed during his criminal history.

April 17th, 2004, Mr. Hamdalla was arrested by Jefferson Parish Sheriff Office for simple battery.    That charge was dismissed, but the pre-sentence investigation report states that the offender, Mr. Hamdalla, was showing the victim his vehicle which he had for sale.    After asking the victim to enter the vehicle to inspect the interior, the subject began to touch the victim on her breast and genital area.    The subject then started to kiss the victim on her face.    When the victim said no the offender bit her on the left cheek and held her down by her wrist.    The victim sustained redness to both wrists and a palm size red area on her cheek.

On August the 12th, 2004, in a separate incident, the defendant was arrested for cruelty to a juvenile.    These charges were refused in 2006. But, according to the incident report filed by the JSPO, the offender allegedly bit the four-year-old daughter of his live-in girlfriend on the buttocks because she, the four-year-old daughter, did not eat her food.    The incident occurred on August 2nd, 2004, and the bite marks were still present and starting to scab at the time the subject was arrested on August the 12th, 2004.

On November 15th, 2006, the offender was arrested by NOPD for aggravated assault.    This charge was refused on January 19th, 2007, because the victim did not show.    The incident report filed by NOPD reveals the offender and the victim agreed upon a purchase.    When they disagreed on the price the alleged victim took the money and left.    The subject pursued the victim in his vehicle and attempted to corner him.    The victim threw a rock at Mr. Hamdalla's vehicle at which time Mr. Hamdalla produced a firearm and shot at the victim twice.

On July 7th, 2007, the offender was arrested by St. Charles Sheriff's Office charged with four counts of attempt manslaughter.    Those charges again are pending.    The incident report indicating that the victim was traveling in his vehicle on the Interstate when the subject's vehicle passed him and merged into his lane.    The subject then slammed on his brakes at which time the victim passed his car, merged back into the lane in front of the defendant.    The rear windshield of the victim's vehicle shattered as he heard the sound of three gunshots.    The victim sped up to get away and heard one more gunshot.    There were a total of four passengers in the victim's vehicle, two adults and two children.

The pre-sentence investigation notes that while on probation in Arkansas, still in that five-year probation, the defendant picked up new charges for unauthorized use of a credit card.

Mr. Pipes has already put onto the record some of the facts concerning that incident in Jefferson Parish.    The Court referred a note from a review of the police report that the victim gave, obviously, an accurate description of the taxicab driver who took advantage of him when he may be imbibed a little too much and fell asleep in the back seat of the car, the taxicab, and when he awoke his Rolex watch was gone, his diamond rings were gone and his credit cards were gone.

JSPO report notes that through their investigation, and through Mr. Hamdalla's statements, he used the credit card at Dillard's, K-Mart, Walmart, Shoe Carnival and Best Buy.    This activity resulted in a conviction while the defendant was still on probation out of Arkansas.

And then the instant offense with the trial record speaking to those facts in the case.

The Court is drawn to the similarities in both these arrests and these convictions that Mr. Hamdalla has garnered during his adult life.    And quite frankly that being using his position in a taxicab picking up fares that may be have been drinking or in a state where they're not as aware that they possibly could be and using that position as a taxicab driver to assert his authority over his fares by stealing from them, and in this case, raping them.

The Court notes that with a male victim he used that position where the victim was asleep in the back seat to steal his property and use it.[47]

Prior to imposing the multiple offender sentence, the trial court explained:

The Court notes this is a case where perhaps the criminal history doesn't truly reflect the offender that stands in front of me today for sentencing.    And by that I mean with the arrests that have occurred with Mr. Hamdalla where charges were refused, one involved a four-year old female where her backside was bitten.

Another report where a female victim was fondled sexually.

Another case where a male victim was shot at twice because of a disagreement.

And then the conviction in Jefferson Parish where another fare, taxicab fare, was prayed upon and his property taken and used shows, in this Court's opinion, a pattern of someone who is using his authority, using his position, using his personality to exact what he thinks is the appropriate outcome in any particular situation, whether it's a four-year old who's not eating, so she's a victim.    Or a victim who is looking at his car and then is fondled, or a male fare who falls asleep and his credit cards are taken and his jewelry.[48]

---

[47]  State Rec., Vol. 5 of 7, Sentencing Transcript, pp. 7-12.

[48]  *Id.*, at pp. 23-24.

This case simply does not qualify as a rare situation in which the difference between the crime and the sentence was unconstitutionally disproportionate.    *Compare Solemn v. Helm*, 463 U.S. 277, 281, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that the Eighth Amendment prohibited a life sentence without the possibility of parole for a recidivist offender convicted of "uttering a 'no account' check for $100"), with *Harmelin v. Michigan*, 501 U.S. 957, 961, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (rejecting a proportionality challenge to a mandatory sentence of life without the possibility of parole imposed on a first-time offender convicted of possessing 672 grams of cocaine), and *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (rejecting a proportionality challenge where the defendant had been sentenced to life imprisonment under a recidivist statute following his conviction for obtaining $120.75 by false pretenses).    Given the decisions cited above involving relatively minor offenses, and in light of the seriousness of the crime here and Hamdalla's significant criminal history including actions of a violent nature, the Court cannot conclude that Hamdalla's sentence is grossly disproportionate or constitutionally excessive under federal law.    Hadalla is not entitled to relief on this claim.

D. *Erroneous Admission of Hearsay Testimony*

Hamdalla's final claim is that trial court erroneously admitted hearsay testimony from the victim's mother in violation of his right to due process and a fair trial.

On direct appeal, the Fourth Circuit denied his claim, holding:

> In this Part, we explain why the admission of the testimony of the victim's mother over Mr. Hamdalla's objection was not reversible error. After reviewing of the record of the trial, we conclude that, while the trial court improperly admitted the hearsay testimony, it was merely cumulative of other admissible testimony.
>
> A
>
> " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the

truth of the matter asserted."   La. C.E. art. 801 C.   Hearsay testimony is not admissible at trial unless provided for by law. See La. C.E. art. 802. Hearsay evidence is generally excluded "because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability."   *State v. Legendre*, 05–1469, p. 7 (La. App. 4 Cir. 9/27/06), 942 So.2d 45, 51.   *See also State v. Spell*, 399 So.2d 551, 555 (La. 1981).

La. C.E. art. 801 D provides several types of prior statements that, if testified to by witnesses, are "not hearsay" as long as the "declarant [also] testifies at the trial or hearing and is subject to cross-examination concerning the statement."   La. C.E. art. 801 D(1).   One of these is a witness' statement made at trial which is "[c]onsistent with the declarant's testimony and is *624 one of initial complaint of sexually assaultive behavior."   La. C.E. art. 801 D(1)(d). This makes the "initial" complaint of a victim of sexual abuse admissible as substantive evidence.   *See State v. Moran*, 584 So.2d 318, 323 (La. App. 4 Cir.1991).

Admissibility of a statement under La. C.E. art. 801 D(l)(d) is a two-part test.   First, the victim must testify at trial consistently with the content of the initial complaint and be subject to cross-examination.   *See* La. C.E. art. 801 D(l).   *See also State v. Valentine*, 95–0970, p. 6 (La. App. 4 Cir. 1/19/96), 668 So.2d 383, 387.   This requirement alleviates the reliability problems inherent in ordinary hearsay, *Moran*, 584 So.2d at 323, as well as issues arising under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and La. Constitution Article I, Section 16.   *See* La. C.E. art. 801D(1) cmt. e; *State v. Moore*, 11–0025, p. 14 (La. App. 4 Cir. 9/7/11), 75 So.3d 22, 30.   If, for any reason, the victim fails to testify consistently with the alleged initial complaint, the initial complaint would be classified as hearsay.   *See Moran*, 584 So.2d at 323.

Second, the victim's prior statement must be an "initial complaint of sexually assaultive behavior."   *See* La. C.E. art. 801 D(l)(d).   "It is only the initial complaint by the victim, whether made to a family member, policeman, or other person, that is defined as non-hearsay under this provision."   La. C.E. art. 801 D(1) cmt. e.   Subsequent complaints or reports about the same crime are not admissible under this provision.   *See Id.*   There are "no additional requirements as to timing or spontaneity for such a statement to be admissible."   *State v. Lawrence*, 98–0348, p. 12 (La. App. 4 Cir. 12/1/99), 752 So.2d 934, 942.   Whether a victim's complaint was an "initial complaint" is determined under the facts and circumstances of the case.   *Moran*, 584 So.2d at 324.   We have limited the term "initial" to its narrow literal meaning of "first" or "original."   *See State v. Henderson*, 607 So.2d 733, 735 (La. App. 4 Cir.1992) (testimony of mother as to daughter's statements was inadmissible hearsay since the victim had already spoken to police and a doctor regarding the incident).   *See also State v. Atkins*, 97–1278, p. 16 (La. App. 4 Cir. 5/27/98), 713 So.2d 1168, 1177 (testimony of detective was inadmissible hearsay when victim spoke with her brother prior to making a statement to the police); *State v. Harris*, 99–2845, p. 13 (La. App. 4 Cir. 1/24/01), 781 So.2d

73, 82 (testimony of aunt was inadmissible hearsay since victim's statements to aunt followed a police interview on the matter).    The "initial complaint" need not be given to any particular person or at any particular time.    The initial complaint need only be comprehensible by the person hearing the complaint.    *Atkins*, 97–1278, p. 16, 713 So.2d at 1177 (citing *State v. Free*, 26,267, p. 11–12 (La. App. 2 Cir. 9/21/94), 643 So.2d 767, 776).

Additionally, the report must be of "sexually assaultive behavior." The use of the term "assaultive behavior" is not intended to restrict this exception to instances that fall within the general provision of La. R.S. 15:36, Assault.    *See* La. C.E. art. 801 D(1)(d) cmt. e.    This is a broad concept covering numerous crimes including La. R.S. 14:42.1, Forcible Rape.    *Id.*

Generally, a trial court's rulings on evidentiary issues will not be disturbed absent a clear abuse of discretion.    *State v. Mosby*, 595 So.2d 1135, 1138–1139 (La. 1992).    "A judgment or ruling shall not be reversed by an appellate court because of any error ... which does not affect substantial rights of the accused."    La.C.Cr.P, art. 921.    *See also State v. Magee*, 11–0574, p. 45 (La. 9/28/12), 103 So.3d 285, 318.    While the article uses dramatically different language, jurisprudence recognizes the importation and application of the "harmless error" rule in this context.    *See State v. Maise*, 00–1158, p. 8 (La. 1/15/02), 805 So.2d 1141, 1147.    *See also* La.C.Cr.P. art. 921 cmt. c. "The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error."    *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).    The harmless error test asks "whether there is a reasonable possibility the error might have contributed to the conviction and whether the court can declare a belief that the error is harmless beyond a reasonable doubt."    *Magee*, 11–0574, p. 45, 103 So.3d at 318 (citing *Chapman v. California*, 386 U.S. 18, 22–23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).    "The reviewing court must find the verdict actually rendered by this jury was surely unattributable to the error."    *Id.* at 11–0574, p. 45–46, 103 So.3d at 318 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).[2]

> [2]The prosecution bears the burden of proving harmless error as they were the beneficiary of the error.    *State v. Lewis*, 12–1021, pp. 15–16 (La. 3/19/13), 112 So.3d 796, 805.

In making this determination, a reviewing court should consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."    *State v. Wille*, 559 So.2d 1321, 1332 (La.1990) (quoting *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431).    The Louisiana Supreme Court has held that, "even if testimony is inadmissible hearsay, if it is merely cumulative or corroborative of other testimony adduced at trial, then the

admission of the hearsay is harmless."    *State v. McIntyre*, 381 So.2d 408, 411 (La. 1980).    *See also State v. Johnson*, 389 So.2d 1302, 1306 (La. 1980). Cumulative testimony is, of course, testimony tending to prove the same point to which other evidence has been offered.

B

When the victim arrived at her mother's home following the rape, she immediately telephoned the taxicab company to report the matter.    During her call with the dispatcher, the victim told the dispatcher about the incident, specifying the taxicab number of the person who committed the acts, when these acts occurred, and what acts were done by Mr. Hamdalla.    The initial purpose of her calling was to allow for the taxicab company to discipline Mr. Hamdalla internally for his acts.    While the victim was speaking on the telephone with the dispatcher, her mother, from her bed, overheard her daughter's conversation in the home's living room describing the rape.    The mother then went to the living room.    After concluding her telephone call, the victim explained the entire matter to her mother, who encouraged her to report the rape to the police.    The mother then testified to what she was told by her daughter at trial.

Importantly, at the trial—in addition to the mother—the victim testified consistently with and in more detail than the mother's testimony and was subject to cross-examination regarding the statement.    The jury also heard firsthand a tape recording of the victim's initial report by telephone to the dispatcher.

C

The testimony of the victim's mother regarding what her daughter told her that night was improperly admitted by the trial court.    The mother's testimony is inadmissible hearsay under La. C.E. art. 801 C and is not excepted from the general inadmissibility of hearsay by La. C.E. art. 801 D(1)(d). While the victim testified at trial consistently with the content of the initial complaint and was subject to cross examination regarding the statement, the victim's prior statement to her mother was not an initial complaint of sexually assaultive behavior.    The victim reported Mr. Hamdalla's conduct to the dispatcher prior to speaking with her mother about what happened.    The initial complaint regarding Mr. Hamdalla's actions was given to the dispatcher, not the mother.    The trial court erred in admitting the mother's testimony regarding her daughter's statements.    The error, however, was harmless as the hearsay was consistent with and merely cumulative of the victim's testimony as well as the recorded call introduced at trial.    Both covered the same issue as the mother's testimony—the victim's recollection of what occurred the night that she was raped.    Thus, the verdict was surely unattributable to the error and, on that account, it does not qualify as reversible error.[49]

---

[49] *Hamdalla*, 126 So.3d at 623-626; State Rec., Vol. 5 of 7

The Louisiana Supreme Court likewise denied relief without assigning additional reasons.[50]

The state appellate court found that the victim's mother's testimony regarding what the victim told her on the night of the incident was hearsay and that the trial court erred in admitting the testimony.    However, the state court found "the verdict was surely unattributable to error," and therefore the admission of the testimony was harmless.[51] That harmless-error determination is before this Court for review.[52]

Where, as here, a state court has found a constitutional error harmless on direct review and the federal court is reviewing that decision on collateral review, the petitioner must meet the standard in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).    *Davis v. Ayala*, 135 S.Ct. 2187, 2198 (2015).    Under *Brecht*, habeas relief is warranted only if the error "had substantial and injurious effect or influence in determining the jury's verdict."    *Brecht*, 507 U.S. at 623.    This test incorporates the requirements of the AEDPA, such that "a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable.    And a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness."    *Davis*, 135 S. Ct. at 2199 (internal quotation marks and citations omitted).    Hamdalla must therefore show that the state court's

---

[50] *Hamdalla*, 138 So.3d at 642. State Rec., Vol. 7 of 7.

[51] *Hamdalla*, 126 So.3d at 626; State Rec., Vol. 5 of 7.

[52] If it is Hamdalla's intention to raise a claim that the evidence was admitted in violation of Louisiana law, the State is correct that the claim is not cognizable on federal habeas review.    *See Swarthout v. Cooke*, 526 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).    Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.    *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).

determination that the admission of the hearsay testimony during his trial was harmless was itself "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The state court found that the victim's mother's testimony was consistent with and merely cumulative of the other evidence adduced at trial, including the victim's testimony, which was more detailed than that of her mother, and the recorded call to the cab company. That decision is not an unreasonable application of clearly established federal law. *See, e.g., United States v. Sanchez-Alaniz*, 517 F. App'x 277, 278 (5th Cir. 2013) ("The improper admission of cumulative evidence is harmless error."); *United States v. Tolliver*, 400 F. App'x 823, 830 (5th Cir. 2010) ("Improper admission under *Crawford* is harmless when there is no reasonable probability that the improperly admitted evidence might have contributed to the conviction, for instance, when the evidence is merely cumulative of other evidence offered without objection." (citations and quotation marks omitted)); *United States v. Yi*, 460 F.3d 623, 634-35 (5th Cir. 2006) (Confrontation Clause error was harmless where testimony regarding out-of-court statements "was not particularly important to the government's case, was cumulative to other evidence, and was corroborated by other evidence."). Indeed, this case stands in marked contrast to those in which the improperly introduced evidence proved to be "the keystone" of the prosecution's case. *See, e.g., McCarley v. Kelly*, 801 F.3d 652, 667 (6th Cir. 2015) (not harmless error in aggravated murder trial where child psychologist's testimony relating toddler's statements were a "keystone holding the arch of the State's case together" and there was no other eyewitness identification of the perpetrator), *cert. denied*, 136 S.Ct. 2508 (2016) ; *Jones v. Basinger*, 635 F.3d 1030 (7th Cir. 2011) (admission of hearsay

testimony not harmless where State lacked physical evidence and had no eyewitness testimony other than one questionable witness who was testifying under a plea agreement that eliminated four murder charges against him); *Fratta v. Quarterman*, 536 F.3d 485, 510 (5th Cir. 2008) (error not harmless where hearsay testimony provided the only information presenting a coherent picture of how the crime was carried out and the sole critical evidence that a murder-for-hire had occurred).

In this case, the State's case rested primarily on the testimony of the victim, who was subjected to a vigorous cross-examination by defense counsel.    The State's case also included the audio recording of the victim's call to the cab company.    This call, which was made before the victim spoke with her mother, corroborated the victim's allegations about the incident.    The hearsay testimony was not crucial to the matter in the context of the trial as a whole, and the strength of the State's case would not have been undermined had the hearsay testimony been excluded.

The state-court determination that the erroneous admission of hearsay testimony from the victim's mother was harmless is not unreasonable.    This Court cannot conclude that the state appellate court's harmless-error determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."    Therefore, this Court should defer to the state court's decision finding the error harmless in the admission of the hearsay testimony.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Hamdalla's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[53]

New Orleans, Louisiana, this  12th  day of        October        2018.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[53] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.